**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**JUDICIAL WATCH, INC.,**                )
                                                    )
                          **Plaintiff,**          )
                                                    )
               **v.**                                )          **Civil Action No. 07-561 (RCL)**
                                                    )
**U.S. FOOD AND DRUG**              )
**ADMINISTRATION,**                    )
                                                    )
                                                    )
                          **Defendant.**         )
_____)

<u>**DEFENDANT'S MOTION TO DISMISS**</u>
<u>**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**</u>

Defendant United States Food and Drug Administration, by and through undersigned

counsel, respectfully moves this Court to dismiss plaintiff's FOIA claims for lack of jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6). Defendant's release of documents to plaintiff rendered

this case moot, thereby depriving this Court of jurisdiction. For the same reason, plaintiff cannot

prove any set of facts that would entitle it to relief. Alternatively, defendant moves for summary

judgment because there are no material issues of fact and defendant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(c). The grounds for this motion are set forth in the

accompanying memorandum of law.

A statement of material facts not genuinely in dispute and proposed order are also filed herewith.

Dated: May 4, 2007.                          Respectfully submitted,


                                             _____/s/_____
                                             JEFFREY A. TAYLOR, D.C. BAR # 498610
                                             United States Attorney


                                             _____/s/_____
                                             RUDOLPH CONTRERAS, D.C. BAR #434122
                                             Assistant United States Attorney


                                             _____/s/_____
                                             ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                             Assistant United States Attorney
                                             555 Fourth St., N.W.
                                             Washington, D.C.  20530
                                             Phone: (202) 514-7198
                                             Fax: (202) 514-8780
                                             Robin.Meriweather2@usdoj.gov

**Of Counsel:**

   Daniel Meron
   General Counsel

   Sheldon T. Bradshaw
   Chief Counsel
   Food and Drug Division

   Eric M. Blumberg
   Deputy Chief Counsel, Litigation

   Wendy S. Vicente
   Associate Chief Counsel
   United States Department of Health and Human Services
   Office of the General Counsel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**JUDICIAL WATCH, INC.,**               )
                                        )
                    **Plaintiff,**      )
                                        )
        **v.**                          )          **Civil Action No. 07-561 (RCL)**
                                        )
**U.S. FOOD AND DRUG**                  )
**ADMINISTRATION,**                     )
                                        )
                                        )
                    **Defendant.**      )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The Court should dismiss plaintiff's Freedom of Information Act ("FOIA") complaint

pursuant to Rule 12(b)(1) or 12(b)(6) because defendant United States Food and Drug

Administration ("FDA") recently produced all responsive records to plaintiff.  This case

concerns a FOIA request in which plaintiff Judicial Watch, Inc. ("Judicial Watch") sought the

production of certain records relating to communications between FDA and Senator Hillary

Rodham Clinton concerning ".75 levonorgestrel," which is sold under the name "Plan B."  FDA

provided plaintiff with all of the requested records on April 6, 2007, and no documents were

withheld.  See Declaration of Lisa C. Granger ("Granger Decl.") at ¶ 5.  That release of records

eliminated any live controversy between the parties, and rendered the case moot.

To the extent plaintiff challenges the adequacy of the search for documents, FDA moves,

in the alternative, for summary judgment.  A FOIA defendant is entitled to summary judgment if

its search for responsive records was reasonable as a matter of law.  As explained below and in

the attached declarations, defendant conducted a comprehensive search to locate responsive

documents, which resulted in 28 pages of released materials.  No genuine issue of fact remains.

Accordingly, the Court should grant defendant's alternative motion for summary judgment if the

Court does not dismiss the case as moot.

## **FACTUAL BACKGROUND**

The relevant facts are fully set forth in Defendant's Statement of Materials Facts Not In

Genuine Dispute.  However, the following brief summary of the facts provides context for this

motion.

By letter dated August 22, 2006, Christopher J. Farrell of Judicial Watch submitted to

FDA a FOIA request for "any and/or all communication and/or correspondence between the

FDA and Senator Hillary Rodham Clinton, . . . [and/or] any agent and/or representative of

Senator Hillary Rodham Clinton, and/or the Office of Senator Hillary Rodham Clinton regarding

'.75 levonorgestrel' also sold under the trade name 'Plan B.'" See Compl. ¶ 5; Granger Decl.

Exh. 1.  On August 24, 2006, FDA sent Judicial Watch a letter acknowledging receipt of the

request.  See Compl. ¶ 6.  Judicial Watch initiated this FOIA action on March 21, 2007, asking

that the Court "order Defendant to search for and produce by a date certain any and all non-

exempt records responsive to Plaintiff's FOIA request." Id. at 3.

On April 6, 2007, FDA sent Judicial Watch the records responsive to Judicial Watch's

FOIA request.  See Granger Decl. ¶ 5; id. Exh. 2.  No responsive documents were redacted or

withheld.  See Granger Decl. ¶ 5.  FDA was able to release those documents despite its

significant backlog of FOIA requests, because the Judicial Watch request was processed in the

track for less cumbersome requests.  See id. ¶ 6.

# STANDARD OF REVIEW

## A.    Motion to Dismiss

Defendant moves for dismissal under Rule 12(b)(1), as events subsequent to the complaint deprived the Court of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  When reviewing a 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003).  In addition, plaintiff bears the burden of persuasion, and must establish subject-matter jurisdiction "by a preponderance of the evidence."  Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.  To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Rann, 154 F. Supp. at 64.

Defendant also moves for dismissal under Rule 12(b)(6), because plaintiff fails to state a claim upon which relief can be granted.  Rule 12(b)(6) requires dismissal if plaintiff "can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court must resolve all factual doubts in favor of the plaintiff, and allow the plaintiff the benefit of all inferences.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**B.**     **Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247.  The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case.  Celotex, 477 U.S. at 325.  "The burden on the moving party may be discharged by 'showing' –  that is, pointing out to the (Court) –  that there is an absence of evidence to support the non-moving party's case."  Id.  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Federal Rule of Civil Procedure 56 requires the party opposing summary judgment to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986).  To avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

Summary judgment is appropriate "if the evidence [the nonmoving party submits] is merely colorable . . . or is not sufficiently probative . . . (T)he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Neither is unsupported speculation enough to defeat a summary judgment motion; the existence of specific, material evidentiary facts must be shown. See Fed. R. Civ. P. 56(e) (the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial"); see also Burke v. Gould, 286 F.3d 513, 517-20 (D.C. Cir. 2002) (requiring a showing of specific, material facts); Hayes v. Shalala, 902 F.Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment).

## ARGUMENT

### I.    PLAINTIFF'S FOIA CLAIM SHOULD BE DISMISSED BECAUSE FDA HAS PROVIDED ALL OF THE REQUESTED RECORDS.

Under Article III, section 2 of the Constitution, federal courts only have jurisdiction to hear and decide actual "cases" or "controversies." Allen v. Wright, 468 U.S. 737, 750 (1984); see National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997). This requirement prevents the issuance of advisory opinions, as it demands the existence of an actual dispute between adverse parties with a stake in the outcome. See Richardson v. Ramirez, 418 U.S. 24, 36 (1974). In fact, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to

actual cases and controversies." <u>Simon v. Eastern Kentucky Welfare Rights Org.</u>, 426 U.S. 26, 37 (1976) (citing <u>Flast v. Cohen</u>, 392 U.S. 83, 95 (1968)).

The case-or-controversy requirement must be met "through all stages of federal judicial proceedings." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990). The effect of post-complaint changes in the facts or law on the continued existence of a particular controversy is assessed through the lens of mootness. <u>See</u> <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 68 n.22 (1997) (quoting <u>United States Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 397 (1980)). Thus, the controversy must exist at the outset of the litigation and continue throughout the existence of the suit. <u>See</u> <u>Columbian Rope Company v. West</u>, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (citing <u>Arizonans for Official English</u>, 520 U.S. 43). As this Circuit has explained:

> [E]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal Court to refrain from deciding it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."

<u>Columbian Rope</u>, 142 F.3d at 1316 (quoting <u>Clarke v. United States</u>, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)). Once a case becomes moot, the court loses jurisdiction. <u>See</u> <u>City of Houston v. Department of Housing and Urban Dev.</u>, 24 F.3d 1421, 1426 (D.C. Cir. 1994).

In FOIA cases, the mootness doctrine comes into play when all documents have been released to the requester. The release of documents eliminates any live controversy between the parties because it gives the requester the relief sought in the FOIA complaint. <u>See</u> <u>Crooker v. United States State Dep't</u>, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced [in a FOIA case] the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made."). Such cases are properly dismissed on mootness grounds because there is no further judicial function for the Court to perform. <u>See</u> <u>Tijerina v.</u>

6

Walters, 821 F.2d 789, 799 (D.C. Cir. 1987); Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982); Trueblood v. Dep't of Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996).

In this case, the Court lacks subject matter jurisdiction because events subsequent to the filing of the complaint have ended any live controversy between the parties. The FOIA claim sought to compel FDA to produce the requested records by a date certain. See Complaint at 3. Plaintiff received this relief when FDA sent Judicial Watch all responsive documents on April 6, 2007. See Granger Decl. at ¶ 5. No withholdings were identified. See id. Even if plaintiff had a viable claim at the time the complaint was filed, plaintiff has now received the relief sought. Therefore, plaintiff's claim should be dismissed as moot.[1] See Tijerina, 821 F.2d at 799; see also Fed. R. Civ. P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action").

Plaintiff's request for attorney's fees and costs does not prevent application of the mootness doctrine in this case. To be sure, FDA's release of documents did not satisfy plaintiff's desire for fees and costs. See Compl. at 3. However, that fee request does not establish a "live controversy" between the parties because plaintiff is not entitled to fees or costs in this litigation. "The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section [5 U.S.C. § 552] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Here, plaintiff has not "prevailed" because the Court has not awarded plaintiff any relief. See Oil, Chem. & Atomic

---

[1] Defendant's release of all responsive documents also requires dismissal pursuant to Rule 12(b)(6). To state a claim under the FOIA, plaintiff must show that the agency has improperly withheld agency records. See 5 U.S.C. § 552(a)(4)(B). Here, no documents were withheld. See Granger Decl. ¶ 5.

7

Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 456-57 (D.C. Cir. 2002); see also

Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Human Res., 532 U.S.

598, 605 (2001) ("We cannot agree that the term 'prevailing party' authorizes federal courts to

award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless

potentially meritless lawsuit (it will never be determined), has reached the 'sought-after

destination' without obtaining any judicial relief."). Accordingly, FDA's voluntary release of all

responsive documents deprives plaintiff of any viable claim for fees or costs.

   **B.   IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SUMMARY
JUDGMENT BECAUSE IT CONDUCTED A REASONABLE AND ADEQUATE
SEARCH FOR RESPONSIVE RECORDS.**

      Even if plaintiff were to challenge the adequacy of the search for responsive records,

defendant would be entitled to summary judgment because FDA released all of the records that it

collected after using its best efforts to locate responsive records. An agency's summary

judgment motion should be granted if the agency shows that it "conduct[ed] a search reasonably

calculated to uncover all relevant documents." Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir.

1996) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Voinche v.

FBI, 425 F. Supp. 2d 134, 135 (D.D.C. 2006). If the plaintiff challenges the nature and extent of

an agency's search for responsive documents, the agency "must demonstrate beyond material

doubt that the search was reasonable.'" Kowalczyk, 73 F.3d at 388.

      The fundamental question is not "whether there might exist any other documents

possibly responsive to the request, but rather whether the search for those documents was

adequate." Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)

(quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In

other words, "the focus of the adequacy inquiry is not on the results." Hornbostel v. United

States Dep't of the Interior, 305 F. Supp. 2d 21, 28 (D.D.C. 2003); see also Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986) (search is not unreasonable simply because it fails to produce all relevant materials). Further, the agency is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." Kowalczyk, 73 F.3d at 389 (holding that agency is not required to speculate about potential leads).

An agency may use reasonably detailed, non-conclusory affidavits to demonstrate that it conducted a reasonable search in accordance with the FOIA. See Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D. C. Cir. 1981); see also Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Those affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." Ground Saucer Watch, 692 F.3d at 771; see also Chamberlain v. United States Dep't of Justice, 957 F. Supp. 292, 294 (D.D.C. 1997) ("It is well established that '[a]gency affidavits enjoy a presumption of good faith that withstand[s] purely speculative claims about the existence and discoverability of other documents," (quoting Albuquerque Publ'g Co. v. United States Dep't of Justice, 726 F. Supp. 851, 860 (D.D.C. 1989)). Therefore, unless plaintiff can point to specific evidence sufficient to put the agency's good faith into doubt, summary judgment must be granted to the agency. Ground Saucer Watch, 692 F.3d at 771.

The declarations filed herewith establish that FDA conducted a reasonable and adequate search for responsive records by employing a method reasonably expected to produce such information. As explained more fully below, FDA personnel identified the locations in which the requested records might reasonably be located, and then conducted searches in those locations. That search yielded 28 pages of responsive records, which FDA released to plaintiff on April 6, 2007. See Granger Decl. ¶ 5.

9

FDA's FOI office determined that FDA's Office of Legislation ("OL") would be the most likely office to have responsive records, and forwarded the request to Ms. Granger in that office, who coordinated the agency's response to the Judicial Watch request. See Granger Decl. ¶ 8. OL staff searched the OL tracking system for any documents concerning communications or correspondence between FDA and Senator Clinton or her agents or representatives regarding Plan B. See id. ¶ 10. OL staff also searched OL phone records and email correspondence for those terms. See id. All responsive records were produced on April 6, 2007. See id. ¶ 5.

The Judicial Watch request also was forwarded to three other offices within FDA that might have responsive documents: the Office of the Executive Secretariat, the Office of the General Counsel – Food and Drug Division (OGC/FDD), Department of Health and Human Services, and the Immediate Office of the Commissioner. See Granger Decl. ¶ 11. Each of these offices conducted its own searches for responsive documents. See id. In the Office of the Executive Secretariat, Ms. Indya Mungo conducted a search for executive correspondence concerning communications or correspondence between FDA and Senator Clinton or her agents or representatives regarding Plan B. See Declaration of Indya Mungo ¶ 5. All responsive documents were forwarded to Ms. Granger in OL, who determined that those responsive documents were exact duplicates of documents already collected by OL. See id.; Granger Decl. ¶ 12.

Similarly, in OGC/FDD, Ms. Karen Schifter supervised a search of OGC/FDD's Plan B litigation files for documents concerning communications or correspondence between FDA and Senator Clinton or her agents or representatives. See Declaration of Karen E. Schifter ¶ 4. She then determined that all responsive documents were exact duplicates of the responsive

documents already collected by OL.  See <u>id.</u> ¶ 5.

Ms. Carol Crim in the Immediate Office of the Commissioner also conducted a search of the Commissioner's calendar records and meeting materials, and collected documents reflecting the dates of meetings between the Commissioner and Senator Clinton on Capitol Hill.  <u>See</u> Declaration of Carol H. Crim ¶ 4.  Those documents were sent to Ms. Granger for production on April 6, 2007.  <u>See</u> <u>id.</u>  The meetings referred to in those calendar records took place on Capitol Hill, and there are no FDA minutes or notes of what transpired in those meetings.  <u>See</u> <u>id.</u> ¶ 5.

As a result of the agency's good-faith search of all potentially responsive components, the agency identified 28 pages of responsive documents.  Ms. Granger produced these documents to Judicial Watch on April 6, 2007.  <u>See</u> Granger Decl. ¶ 5.   No documents were withheld or redacted.  <u>See</u> <u>id.</u>

In summary, the detailed declarations filed herewith prove that FDA conducted a good-faith search for responsive documents in all of the areas in which such records were likely to be found.  Those declarations "enjoy a presumption of good faith."  <u>Ground Saucer Watch</u>, 692 F.3d at 771.  Therefore defendant is entitled to summary judgment in this case.  <u>See</u> <u>id.</u>

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action, or alternatively, enter summary judgment in favor of the defendant.

Dated: May 4, 2007                                Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Daniel Meron
General Counsel

Sheldon T. Bradshaw
Chief Counsel
Food and Drug Division

Eric M. Blumberg
Deputy Chief Counsel, Litigation

Wendy S. Vicente
Associate Chief Counsel
United States Department of Health and Human Services
Office of the General Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of May, 2007, I caused a copy of the foregoing

Motion to Dismiss or in the Alternative for Summary Judgment and Statement of Material Facts

Not In Genuine Dispute to be served upon Plaintiff by the Court's Electronic Case Filing system

or, should I receive notice from the ECF system indicating that electronic transmission failed, to

be served by first class mail, postage prepaid addressed to:

Paul J. Orfanedes
Judicial Watch, Inc.
501 School Street SW
Suite 500
Washington, DC 20024-2754


                                     _____/s/   Robin M. Meriweather_____
                                     Robin M. Meriweather, D.C. Bar # 490114

13

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                        )

**JUDICIAL WATCH, INC.,**          )
                        )

          **Plaintiff,**       )
                        )

         **v.**             )      **Civil Action No. 07-561 (RCL)**
                        )

**U.S. FOOD AND DRUG**       )
**ADMINISTRATION**          )
                        )

                        )
          **Defendant.**     )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL
## <u>FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE</u>

Pursuant to Local Rules 7(h) and 56.1, defendant United States Food and Drug Administration ("FDA") hereby submits the following statement of material facts as to which there is no genuine dispute. FDA believes that there are no material facts in dispute that would preclude disposition of this case on the merits by entry of summary judgment. The facts established below are sufficient to support the award of summary judgment to defendant.

1.       By letter dated August 22, 2006, Christopher J. Farrell of Judicial Watch, Inc. ("Judicial Watch") submitted to FDA a request under FOIA for "any and/or all communication and/or correspondence between the FDA and Senator Hillary Rodham Clinton, . . . [and/or] any agent and/or representative of Senator Hillary Rodham Clinton, and/or the Office of Senator Hillary Rodham Clinton regarding '.75 levonorgestrel' also sold under the trade name 'Plan B.'" <u>See</u> Compl. ¶ 5; Granger Decl. Exh. 1.

2.       On August 24, 2006, FDA sent Judicial Watch an acknowledgment of the receipt of the request. <u>See</u> Compl. ¶ 6. On January 26, 2007, Judicial Watch submitted a follow-up inquiry. <u>See</u> Granger Decl. ¶ 4.

3.      On March 21, 2007, Judicial Watch sued FDA in the instant case to compel production of the requested documents under the FOIA.  See Dkt. Entry 1.

4.      On April 6, 2007, FDA sent Judicial Watch the records responsive to its request, consisting of 28 pages of documents.  See Granger Decl. ¶ 5; id. Exh. 2.  No documents were redacted or withheld.  See Granger Decl. ¶ 5.

5.      FDA was able to process the request more quickly than other requests in its significant FOI backlog because FDA determined that the request could be placed in the track for less cumbersome requests. See Granger Decl. ¶ 6.

6.      FDA conducted a thorough search for any responsive documents, as described in the declarations of Lisa C. Granger ("Granger Decl."), Indya Mungo ("Mungo Decl."), Karen E. Schifter ("Schifter Decl."), and Carol H. Crim ("Crim Decl.").  In particular, the request was sent to FDA's Office of Legislation ("OL"), which handles all Congressional inquiries.  See Granger Decl. ¶ 9.  An analyst on the OL staff conducted a search of the OL tracking system for any responsive documents.  See id. ¶ 10.  OL also conducted a search of OL phone records and email correspondence.  Id.  All responsive documents that were located were produced on April 6, 2007.  See id.

7.      The FOIA request was also sent to FDA's Office of Executive Secretariat, which conducted its own search of any relevant documents pertaining to the Judicial Watch request.  See Mungo Decl. ¶¶ 4, 5.  Any responsive documents collected during this search were forwarded to OL, which determined that they were duplicative of documents already collected by OL.  See id. ¶ 6; Granger Decl. ¶ 12.

8.      The Judicial Watch request was also sent to the Office of the General Counsel – Food and Drug Division ("OGC/FDD") of the Department of Health and Human Services.  See Schifter Decl. ¶ 4.  Ms. Schifter supervised a search for all responsive documents within

OGC/FDD's Plan B litigation documents. <u>See</u> <u>id.</u> She then compared those documents to the documents collected by OL, and determined that any responsive documents were exact duplicates of the documents already collected by OL. <u>See</u> <u>id.</u> ¶ 5.

9.     The Judicial Watch request was also sent to the Immediate Office of the Office of the Commissioner, which conducted a search of the Commissioner's calendar records. <u>See</u> Cri m Decl. ¶ 4. That office collected records concerning meetings between Senator Clinton and the Commissioner on Capitol Hill. <u>See</u> <u>id.</u> No minutes or notes were taken at those meetings, however, and that office has no additional responsive documents. <u>See</u> <u>id.</u> ¶ 5. The calendar records were produced to Judicial Watch on April 6, 2007. <u>See</u> Granger Decl. ¶ 13.

10.     Despite FDA's production of the requested documents, Judicial Watch has declined to dismiss its case.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Daniel Meron
General Counsel

Sheldon T. Bradshaw
Chief Counsel
Food and Drug Division

Eric M. Blumberg
Deputy Chief Counsel, Litigation

Wendy S. Vicente
Associate Chief Counsel
United States Department of Health and Human Services
Office of the General Counsel

### DECLARATION OF CAROL H. CRIM

I, Carol H. Crim, do hereby declare under penalties of perjury, pursuant to 28 U.S.C.
§ 1746, that the following is true and correct to the best of my knowledge, information, and
belief:

1. I am a Special Assistant to the Commissioner, Immediate Office of the Office of the
Commissioner ("Immediate Office), United States Food and Drug Administration ("FDA").

2. My responsibilities include, among other things, oversight of the requests made to
FDA under the Freedom of Information Act ("FOIA") that are internally directed to the
Immediate Office.

3. By letter dated August 22, 2006, Christopher J. Farrell of Judicial Watch, Inc.
submitted to FDA a request under FOIA for "any and/or all communication and/or
correspondence between the FDA and Senator Hillary Rodham Clinton, . . . [and/or] any agent
and/or representative of Senator Hillary Rodham Clinton, and/or the Office of Senator Hillary
Rodham Clinton regarding '.75 levonorgestrel' also sold under the trade name 'Plan B.'"

4. The Judicial Watch request was conveyed to the Immediate Office, which has the
Commissioner's calendar records. I am familiar with those records, and I conducted a search for
any responsive records pertaining to communications or correspondence between FDA and
Senator Clinton or her agents or representatives regarding Plan B. I also conducted a search of
the Commissioner's meeting materials for responsive documents. I produced responsive records
reflecting the dates of meetings between the Commissioner and Senator Clinton to the Office of

Legislation, which coordinated the agency's response to the Judicial Watch request.

5. The meetings referenced by the calendar records occurred on Capital Hill, and there
are no FDA minutes or notes of what transpired in those meetings.

Executed on May ∕, 2007.

*Carol H. Crim*

Carol H. Crim
Special Assistant to the Commissioner
United States Food and Drug Administration

2

## DECLARATION OF LISA C. GRANGER

I, Lisa C. Granger, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Supervisory Congressional Analyst, Office of Legislation ("OL"), Office of the Commissioner, United States Food and Drug Administration ("FDA").

2. My responsibilities include, among other things, oversight of the requests made to FDA under the Freedom of Information Act ("FOIA") that are internally directed to OL.

3. By letter dated August 22, 2006, Christopher J. Farrell of Judicial Watch, Inc. submitted to FDA a request under FOIA for "any and/or all communication and/or correspondence between the FDA and Senator Hillary Rodham Clinton, . . . [and/or] any agent and/or representative of Senator Hillary Rodham Clinton, and/or the Office of Senator Hillary Rodham Clinton regarding '.75 levonorgestrel' also sold under the trade name 'Plan B.'" (The FOIA request is attached as Exhibit 1).

4. On August 24, 2006, FDA sent Judicial Watch an acknowledgment of the receipt of the request. On January 26, 2007, Judicial Watch submitted a follow-up inquiry.

5. On April 6, 2007, I sent to Judicial Watch the records responsive to its request. No documents were redacted or withheld. There were 28 pages of documents. (The letter and the enclosures are attached as Exhibit 2).

6. In my April 6, 2007 cover letter to Judicial Watch, I explained as follows:

As you may be aware, FDA currently has a significant backlog of FOI requests. Courts have recognized that this backlog is a regrettable but unavoidable consequence of the abundance of FOI requests received by FDA and the limited resources available to FDA for responding to such requests. Nevertheless, because your request was processed in the track for less cumbersome requests, we are able to respond at this time.

Exhibit 1.

7. I understand that, after FDA had produced the responsive documents, counsel for the government asked counsel for Judicial Watch whether it planned to dismiss this case. Counsel for Judicial Watch apparently expressed doubt, based only on the quantity of documents produced, regarding the adequacy of FDA's search. Accordingly, I describe below the search that the agency undertook.

8. As a first step after a FOI request is received, FDA's headquarters FOI office, the Division of Freedom of Information, identifies the agency component or components most likely to have responsive documents. In this case, that office identified OL as the most likely to have responsive documents and accordingly referred the Judicial Watch request to me. OL therefore coordinated the agency's response to the Judicial Watch request.

9. OL is the agency component responsible for coordinating and preparing agency responses to Congressional and legislative inquiries on various issues that affect the agency including proposed legislation, oversight, investigative, and constituent matters. Under FDA procedures, all Congressional inquiries, no matter where in FDA they are directed, should be coordinated with OL. In addition, OL is responsible for coordinating the drafting of Congressional testimony. Thus, virtually all of the documents responsive to the Judicial Watch request should be in the possession of OL.

10. I requested that an analyst on the OL staff conduct a search of the OL tracking

2

system for any communications or correspondence between FDA and Senator Clinton or her agents or representatives regarding Plan B. We also conducted a search of OL phone records and email correspondence for those terms. All of the responsive documents that we located were produced in my letter to Judicial Watch on April 6, 2007.

11. The FOIA request was also conveyed to the only other offices within FDA that might reasonably be expected to have responsive documents: the Office of the Executive Secretariat, the Immediate Office of the Office of the Commissioner, and the Office of the General Counsel (OGC) — Food and Drug Division of the Department of Health and Human Services.

12. I determined that the Office of the Executive Secretariat did not have any responsive documents that were not exact duplicates of the documents that I collected in OL. Ms. Karen Schifter, counsel in OGC, determined that OGC did not have any responsive documents that were not exact duplicates of the documents that I collected in OL.

13. I additionally determined that the Immediate Office of the Office of the Commissioner had collected documents reflecting the dates of meetings between the Commissioner and Senator Clinton that had not been collected in OL. Accordingly, I produced those documents along with the OL documents in my letter to Judicial Watch on April 6, 2007.

Executed on May 2, 2007.

Lisa C. Granger
Supervisory Congressional Analyst
Office of Legislation
United States Food and Drug Administration

3

# EXHIBIT 1



PRIVACY:
FEE WAIVER: ✓
UNPURGED
DO NOT RELEASE:

## VIA FACSIMILE AND CERTIFIED US MAIL

August 22, 2006

Betty B. Dorsey
Director, FOI Staff
U. S. FOOD AND DRUG
   ADMINISTRATION (FDA)
5600 Fishers Lane (HFI-30)
Rockville, MD 20857
(Fax. No.: 301-443-1726)
(Art. No.: 7005 1160 0000 8541 8433)

*06 - 14086*
**RECEIVED**
AUG 3 0 2006
**FDA DFOI (HFI-35)**

### Re: Freedom of Information Act Request

Dear Sir/Madam:

Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the U. S. Food and Drug Administration (hereafter "FDA") produce the following agency records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, within twenty (20) business days:

1) Any and/or all communication and/or correspondence between the FDA and Senator Hillary Rodham Clinton (D-NY) regarding ".75 levonorgestrel" also sold under the trade name "Plan B."

2) Any and/or all communication and/or correspondence between the FDA and any agent and/or representative of Senator Hillary Rodham Clinton (D-NY), and/or the Office of Senator Hillary Rodham Clinton regarding ".75 levonorgestrel" also sold under the trade name "Plan B."

For purpose of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, telegrams, teletypes, facsimiles, papers, forms, records, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns,

DIVISION OF FOI
REQUESTER TYPE:
REQUESTER CATEGORY:

HF-40
HFW1

**U.S. Food and Drug Administration**
**FOIA Request**
**August 22, 2006**
**Page 2 of 7**

computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail, meaning any electronically transmitted text or graphic communication created upon and transmitted or received by any computer or other electronic device, and all materials stored on compact disk, computer disk, diskette, hard drive, server, or tape; (3) any audio, aural, visual, or video records, recordings, or representations of any kind, including without limitation all cassette tapes, compact disks, digital video disks, microfiche, microfilm, motion pictures, pictures, photographs, or videotapes; (4) any graphic materials and data compilations from which information can be obtained; (5) any materials using other means of preserving thought or expression; and (6) any tangible things from which data or information can be obtained, processed, recorded, or transcribed. The term "record" also shall mean any drafts, alterations, amendments, changes, or modifications of or to any of the foregoing.

**If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.**

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. Judicial Watch, Inc. regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

As a member of the news media, Judicial Watch uses the following means, among others, to publish and disseminate its distinctive work to the public:

(1)    Judicial Watch maintains an Internet site, www.JudicialWatch.org, where the public can review records obtained through FOIA and read editorial works prepared by Judicial Watch, Inc., including news releases, based on FOIA materials. This website

**U.S. Food and Drug Administration**
**FOIA Request**
**August 22, 2006**
**Page 3 of 7**

is viewed by over 20,000 people per day on average, and on several occasions, has logged up to 1,000,000 visitors in a single day.

(2)    Judicial Watch also publishes a monthly newsletter in which it publishes its own editorial works and presents, analyzes, and explains information it obtains through FOIA. Judicial Watch, Inc.'s newsletter is sent to approximately 140,000 individuals each month. The organization also utilizes an e-mail Infonet service that sends out updates of Judicial Watch's activities over the Internet to almost 18,000 persons.

(3)    Judicial Watch also periodically publishes and disseminates its own distinct works in the form of books and reports. For example:

- September 1998 – Judicial Watch, Inc. published the Interim Report on Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal from Elected Office. This 145-page report was accompanied by nearly 4,000 pages of supporting documentation and was crafted, in part, from the raw materials obtained by Judicial Watch through FOIA requests, among among other regular means.

- August 1999 – Judicial Watch published Filegate Status Report, which is 136 pages long and is supported by nearly 1000 pages of documentation.

- March 2001 – Judicial Watch published The Judicial Watch Florida Recount, an independent, non-partisan analysis of the results of Florida's hotly contested 2000 Presidential election based upon a sampling of ballots reviewed by Judicial Watch pursuant to Florida's version of FOIA.

- February 2002 – Judicial Watch published The Judicial Watch 2002 "State of the Union" Report, Bush Administration Ethics Enforcement: "A Failure of Leadership."

- September 2002 – Judicial Watch published Fatal Neglect: The U.S. Government's Continuing Failure to Protect American Citizens from Terrorists.

- November 21, 2003 – Judicial Watch produced Analysis of GAO Testimony: US Postal Service – Clear Communication With Employees Needed Before Reopening of Brentwood Facility. (GAO-04-2057T/October23, 2003). Comptroller General of the United States David M. Walker, in a reply to Judicial Watch's Analysis of GAO Testimony, wrote on December 17, 2003, "We view Judicial Watch as an important accountability organization in Washington, D.C."

- June 29, 2005 – Judicial Watch produced a special Report US Border Patrol Survey Analysis, an analysis of documents produced under FOIA.

**U.S. Food and Drug Administration**
**FOIA Request**
**August 22, 2006**
**Page 4 of 7**

http://www.judicialwatch.org/borderpatrolreport.shtml

- February 3, 2006 – Judicial Watch held an educational panel at the National Press Club and published a Special Report of the event, "A Discussion of Ethics in Washington."
  http://www.judicialwatch.org/archive/2006/special-report-ethics.pdf

- May 9, 2006 – Judicial Watch produced The Clinton RU-486 Files, a special report of the Clinton administration's effort to put the abortion drug RU-486 on the market in the United States, based on documents obtained from the National Archives at the Clinton Presidential Library and in the course of a five year FOIA litigation battle between Judicial Watch and the U.S. Food and Drug Administration (FDA).

Judicial Watch also publishes and disseminates its distinctive work by participating in public conferences and seminars, including its own "Ethics in Government" conferences held in Pasadena, California (1999), Washington, DC (2000), and Miami, FL (2001).

Judicial Watch hold quarterly education panels at the National Press Club in Washington DC that have been televised by C-SPAN. Past panel discussions have been: "A Discussion of Ethics in Washington," "The Case for Open Government," "Conservative Perspectives on the Alito Nomination," and "The Role of Grassroots Groups in the Supreme Court Nominating Process."

Judicial Watch also works with other media organizations to publish and disseminate distinctive work to the public, and representatives of Judicial Watch appear frequently on nationally broadcast television and radio programs. Judicial Watch has been granted press credentials at a number of national conventions and other events.

On February 16, 2005, Judicial Watch was rated by the highly respected capitol newspaper *The Hill* as being on of the nation's top ten "watchdogs."

Consequently, Judicial Watch qualifies for a waiver of search fees as a member of the news media. See *National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). In fact, Judicial Watch has been recognized as a member of the news media in other FOIA litigation. See *Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000).

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

**U.S. Food and Drug Administration**
**FOIA Request**
**August 22, 2006**
**Page 5 of 7**

> shall be furnished without any charge or at a charge
> reduced below the fees established under clause (ii) if
> disclosure of the information is in the public interest
> because it is likely to contribute significantly to public
> understanding of the operations or activities of government
> and is not primarily in the commercial interest of the
> requester. 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch ongoing efforts document the operations and activities of the federal government and to educate the public about these operations and activities. As part of its Transparency Project, Judicial Watch is investigating process for over-the-counter (hereafter "OTC") status for "Plan B."

Courts applying the "public interest" fee waiver provision of FOIA typically take into account four factors in determining whether to grant a waiver: (1) whether the subject of the requested records concerns the operations or activities of government; (2) whether disclosure of the requested records is likely to contribute to an understanding of government operations or activities; (3) whether disclosure of the requested records will contribute to a "reasonably broad" audience and whether the requestor has the "ability and intention" to disseminate the information to the public; and (4) whether disclosure of the requested record will contribute "significantly" to the public understanding. See *D.C. Technical Assistance Org. v. HUD*, 85 F. Supp.2d 46, 48-49 (D.D.C. 2000); 28 C.F.R. § 16.11(k)(2)(i)-(iv). Request for "public interest" waivers are to be judged on a case-by-case basis." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

Without question, the subject-matter of the request concerns the operations and activities of government, namely the communication between the United States Congress and the FDA regarding "Plan B."[1]

Disclosure of the requested records is likely to contribute to an understanding of government operations and activities and will appeal to a "reasonably broad" audience. The American public is obviously interested in the safety and medical concerns of the drug approval process of the FDA.

---

[1]    Kurt Eichenwald and Michael Moss. "Rising Numbers Sought Pardons in Last 2 Years," *The New York Times*. January 29, 2001.

**U.S. Food and Drug Administration**
**FOIA Request**
**August 22, 2006**
**Page 6 of 7**

Indeed, the American public deserves full disclosure of the details of the apparent decision of the FDA to allow ".75 levonorgestrel" referred to informally as the "morning after pill" or by its trade name "Plan B," to be sold over-the-counter ("OTC"), as opposed to its current status as a prescription medication ("Rx"), to women 18 years and older.[2] According to press reports, United States Senators put public pressure on the FDA to change the status of "Plan B" from Rx to OTC, going so far as to hold up the Senate nomination of Dr. Andrew von Eschenbach, and last year, the nomination of former FDA commissioner Lester Crawford, to force the decision. Facts have been raised as to the ability of "Plan B" to act as an abortifacient,[3] as well as the level of hormones contained in "Plan B" being a health risk to women.[4]  Without question the public deserves full disclosure of the lobbying of the FDA by public officials for its approval.

Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts, including radio and television programs, website, newsletter, periodic published reports, public appearances, and other educational undertakings.

Finally, disclosure of the requested records will contribute significantly to the public's understanding because relatively little is known about the correspondence between Senator Clinton and the FDA on the matter. Senators Clinton and Patty Murray (D-Washington), stated that they would block a floor vote on the von Eschenbach confirmation until the FDA makes a final "yes or no" decision on the drug's sale.[5] Without question the records requested by Judicial Watch will shed further light on this important matter.

Given these compelling circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

---

[2]    Jonathan D. Rockoff. "Senators Wary of FDA Action on Plan B," *The Baltimore Sun*. August 1, 2006.

[3]    *See* Statement of Judie Brown, President of American Life League.  Testimony before the Reproductive Health Drug Advisory Committee. Center for Drug Evaluation (CDER). December 16, 2003.  Division of Dockets Management (HFA-305).  Docket No. 2001P-0075.

[4]    Wendy Wright. "Easy Access Poses Risks," *USA Today*. April 18, 2004.

[5]    Jonathan D. Rockoff. "Senators Wary of FDA Action on Plan B," *The Baltimore Sun*. August 1, 2006.

---

**U.S. Food and Drug Administration**
**FOIA Request**
**August 22, 2006**
**Page 7 of 7**

We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days.

Sincerely,

JUDICIAL WATCH, INC.

Christopher J. Farrell

CJF/mac

## DECLARATION OF INDYA MUNGO

I, Indya Mungo, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Policy Analyst, Office of the Executive Secretariat, United States Food and Drug Administration ("FDA").

2. My responsibilities include, among other things, oversight of the requests made to FDA under the Freedom of Information Act ("FOIA") that are internally directed to Office of the Executive Secretariat.

3. By letter dated August 22, 2006, Christopher J. Farrell of Judicial Watch, Inc. submitted to FDA a request under FOIA for "any and/or all communication and/or correspondence between the FDA and Senator Hillary Rodham Clinton, . . . [and/or] any agent and/or representative of Senator Hillary Rodham Clinton, and/or the Office of Senator Hillary Rodham Clinton regarding '.75 levonorgestrel' also sold under the trade name 'Plan B.'"

4. A copy of the Judicial Watch request was sent to FDA's Office of the Executive Secretariat. The responsibilities of the Office of the Executive Secretariat include providing correspondence control for the Commissioner, including the development and operation of tracking systems to identify and resolve early warnings and bottleneck problems with executive correspondence; and receiving and responding to incoming correspondence directed to the offices of the Commissioner.

5. I conducted a search of the Office of the Executive Secretariat's Agency Information Management System (AIMS) records for responsive documents concerning communications or correspondence between FDA and Senator Clinton or her agents or representatives and Plan B.

6. I made all of the responsive documents available to the Office of Legislation, which coordinated the agency's response to the Judicial Watch request.

Executed on April 26, 2007.

Indya Mungo
Policy Analyst
United States Food and Drug Administration

2

## DECLARATION OF KAREN E. SCHIFTER

I, Karen E. Schifter, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an Associate Chief Counsel, Office of the General Counsel — Food and Drug Division (OGC/FDD), Department of Health and Human Services.

2. By letter dated August 22, 2006, Christopher J. Farrell of Judicial Watch, Inc. submitted to the United States Food and Drug Administration (FDA) a request under FOIA for "any and/or all communication and/or correspondence between the FDA and Senator Hillary Rodham Clinton, . . . [and/or] any agent and/or representative of Senator Hillary Rodham Clinton, and/or the Office of Senator Hillary Rodham Clinton regarding '.75 levonorgestrel' also sold under the trade name 'Plan B.'"

3. OGC/FDD has been involved in coordinating, since January 2005, the government's defense in litigation over Plan B, and I am the attorney within OGC/FDD assigned to that case. In the course of assembling the administrative record and responding to discovery in that case, OGC/FDD has collected over 10,000 pages of FDA documents on Plan B, including correspondence, memoranda, and emails (in addition to the more than 100,000 pages in comments to the FDA docket and submissions from the drug sponsor related to its drug application). Any document within OGC/FDD that would be responsive to the Judicial Watch request would be within this collection of Plan B litigation documents.

4. I am familiar with the documents that OGC/FDD has collected in the Plan B litigation.

After my receipt of a copy of the FOI request from Judicial Watch, I supervised a search for any

responsive documents concerning communications or correspondence between FDA and Senator

Clinton or her agents or representatives within this collection of Plan B documents.

5. I compared the documents that we located with the documents that were collected by

FDA's Office of Legislation (OL) and produced to OL all documents that were not exact

duplicates of the documents it had already found.

Executed on May $\underline{1}$, 2007.

Karen E. Schifter
Associate Chief Counsel
United States Food and Drug Administration

2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.1:07CV00561(RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Upon consideration of Defendant's Motion to Dismiss Or, In the Alternative, for

Summary Judgment, it is this _____ day of _____, 2007:

  _____ ORDERED that Defendant's Motion to Dismiss Or, In the Alternative, for

Summary Judgment be and is hereby GRANTED.

  _____ ORDERED that Plaintiff's complaint be and is hereby DISMISSED

  _____ ORDERED that summary judgment be and is hereby entered in favor of

Defendant.

SO ORDERED.

        _____

        United States District Judge