## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JUDICIAL WATCH, INC.,                    )
                                         )
                    Plaintiff,           )
                                         )
           v.                            )        **Civil Action No. 07-561 (RCL)**
                                         )
U.S. FOOD AND DRUG                       )
ADMINISTRATION,                          )
                                         )
                                         )
                    Defendant.           )
_____)

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### INTRODUCTION AND SUMMARY

FDA has conducted a thorough search for records responsive to the three Judicial Watch FOIA requests at issue in this case, and released all responsive records that were located, with no redactions or withholdings. The affidavits submitted with FDA's summary judgment motion demonstrate that FDA's search was "reasonably calculated to uncover all relevant documents." Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Voinche v. FBI, 425 F. Supp. 2d 134, 135 (D.D.C. 2006). Specifically, the FDA determined that the Office of Legislation was the office most likely to have records pertaining to communications between Senators Clinton, Enzi, and Murray and FDA concerning Plan B, and that three other FDA offices also might have responsive records. FDA personnel in all four offices conducted searches, and have submitted affidavits describing their search and indicating that all of the responsive records they found (except identical duplicates of records found by another FDA office) were produced to Judicial Watch on April 6,

and July 10, 2007.  <u>See</u> Declaration of Lisa C. Granger dated May 2, 2007, ¶ 5 ("May Granger Decl.") (Dkt. Entry 25 at Exh. A); Declaration of Lisa C. Granger dated July 12, 2007, ¶ 6 ("July Granger Decl.") (Dkt. Entry 25 at Exh. B).

        Judicial Watch attempts to raise a material factual dispute by challenging the reasonableness of FDA's search.  First, Judicial Watch speculates that there might be additional documents FDA did not find, and that these allegedly "missing materials" indicate that the search was unreasonable.  That theory is directly at odds with D.C. Circuit precedent which clearly indicates that the relevant question is whether the agency <u>looked</u> in the appropriate places, and not whether it <u>found</u> everything that might exist.  <u>See, e.g.,</u> <u>Iturralde v. Comptroller of the Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003) (explaining that courts should focus on the method instead of the results).  Second, Judicial Watch accuses FDA of failing to provide sufficiently detailed affidavits, and claims that some aspects of the search were not fully explained.  Although the prior declarations provided sufficient information concerning the nature and extent of the search, FDA is submitting supplemental declarations with this reply memorandum that provide additional details.  Those affidavits, considered with the affidavits submitted with the summary judgment motion, demonstrate "beyond material doubt" that FDA conducted a thorough and reasonable search, by having FDA personnel in the offices likely to have responsive documents conduct searches for records.  <u>Kowalczyk</u>, 73 F.3d at 388.  That is all the law requires, and FDA is entitled to summary judgment.

**ARGUMENT**

**I.    JUDICIAL WATCH'S SPECULATION THAT THERE ARE MISSING RECORDS DOES NOT CREATE A MATERIAL FACTUAL DISPUTE CONCERNING THE SUFFICIENCY OF FDA'S SEARCH FOR RECORDS.**

The affidavits describing the nature of FDA's search and the offices in which those searches were conducted "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents."  Ground Saucer Watch, 692 F.3d at 771; see also Chamberlain v. United States Dep't of Justice, 957 F. Supp. 292, 294 (D.D.C. 1997) (finding same principles "well established").  Nonetheless, Judicial Watch leads with the argument that "missing records demonstrate that FDA did not conduct a reasonable search."  Opp. at 4 (Dkt. Entry 26).  That theory is heavy on speculation and light on precedential or factual support, and should be rejected.

Judicial Watch's argument rests on the mistaken premise that identifying records that are allegedly missing from the agency's FOIA response disproves and/or raises a material factual dispute concerning the reasonableness of an agency's search.  However, as the D.C. Circuit has held, the fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  In other words, "the focus of the adequacy inquiry is not on the results."  Hornbostel v. United States Dep't of the Interior, 305 F. Supp. 2d 21, 28 (D.D.C. 2003); see also Iturralde, 315 F.3d at 315 (concluding that the adequacy of a search should be measured by the methods used and not the "fruits of the search"); Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986) (search is not unreasonable

simply because it fails to produce all relevant materials).  Judicial Watch's suggestion that the fact that certain records were not found supports an inference that FDA did not make a sufficiently reasonable effort to find responsive records cannot be reconciled with that precedent.

To be sure, there are limited circumstances in which "positive indications of overlooked materials" might be relevant to a court's assessment of a search.  <u>Valencia-Lucena v. United States Coast Guard</u>, 180 F.3d 321, 326 (D.C. Cir. 1999).  However, this is not such a case.  In <u>Valencia-Lucena</u>, the plaintiff requested specific records — a logbook which the government had introduced as evidence in a criminal trial — and the agency responded that it could not locate those records.  The Court recognized that the adequacy of the search was "separate from the question of whether the logbook entries are found," but concluded that the record suggested that the search was deficient.  <u>Id.</u>  The Court did not base that conclusion on the fact that the logbook was not located.  Rather, the "positive indication[] of overlooked materials" was the agency's failure to search all the places in which responsive records were likely to be found.  <u>Id.</u> at 327-28.  The Coast Guard neither searched the office it knew might have responsive records, nor contacted the employee most likely to know where the logbook might be found.  <u>See id.</u> Here, in contrast, FDA searched all the offices that were likely to have responsive records — the Office of Legislation, the Office of the Executive Secretariat, the Office of the General Counsel – Food and Drug Division (OGC/FDD), Department of Health and Human Services, and the Immediate Office of the Commissioner ("Immediate Office").  <u>See</u> May Granger Decl., ¶ 11 (Dkt. Entry 25 at Exh. A); July Granger Decl., ¶ 12 (Dkt. Entry 25 at Exh. B).  Representatives from each of those offices have submitted affidavits describing their search.  FDA found responsive records, and released those records to Judicial Watch.  Thus, the circumstances here

are entirely different from those that led the <u>Valencia</u> court to question the adequacy of the

agency's search.  <u>See</u> <u>Itarrulde</u>, 315 F.3d at 315 (distinguishing <u>Valencia</u> because there was no

evidence that the agency failed to search offices or files where the relevant document might have

been found).

 Further, Judicial Watch's "missing records" theory relies on the type of speculation that

cannot be used to overcome agency personnel's sworn affidavits.  <u>See, e.g.</u>, <u>Ground Saucer</u>

<u>Watch</u>, 692 F.3d at 771.  Judicial Watch asserts that it is "unreasonable to think" that there were

no notes or written information from FDA's briefings of the Senators, "highly unlikely" that

FDA has no records concerning the hold on Dr. von Eschenbach's nomination, and "risible" for

FDA to assert that there were no correspondence or records from the meeting or the hold.  Opp.

at 5 (Dkt. Entry 26).  Unlike the plaintiff in <u>Valencia</u>, Judicial Watch has no proof that any

additional materials existed and were in the agency's possession, and can point to no evidence to

support its claim that FDA possesses records beyond those already released.  Instead, Judicial

Watch relies entirely on its view of the types of records that should or would have been

generated in this context.

 The fact that the Senators arranged a meeting with Dr. von Eschenbach does not mean

that <u>FDA</u> has written records concerning that meeting, other than the calendar records that FDA

has already produced in response to the Judicial Watch requests.  In the Supplemental

Declaration of Kelly Palmer, Ms. Palmer thoroughly explains the process she used in searching

the Commissioner's calendar records and meeting materials.  <u>See</u> Supp. Palmer Decl. ¶¶ 6, 7

(Exh. 1 hereto). Because any written records related to that meeting would most likely have been

located in the meeting materials, and because Ms. Palmer searched the meeting materials but did

not locate any responsive documents within those materials, the agency has satisfied its

obligations under the FOIA.

Judicial Watch's assertion that the search was inadequate because it failed to turn up any

record of Dr. von Eschenbach's nomination is equally unfounded.  See Opp. at 5 (Dkt. Entry 26).

 FDA conducted a search in OL, the office within FDA most likely to have responsive

Congressional documents, using the terms "Clinton," "Enzi," and "Murray."  Supp. Granger

Decl. ¶ 6 (Exh. 2 hereto).  That search was conducted electronically in an OL tracking system

and in Microsoft Office Outlook for email correspondence, and it was done manually in hard

copies of OL records. See id. ¶ 6.  Those search terms would be likely to locate correspondence

and communications between the Senators and FDA regarding Plan B, and Ms. Granger did in

fact locate and produce such items. See id.  The search conducted with those search terms did

not yield the record of Dr. von Eschenbach's nomination.  OL does not maintain a complete set

of all such Congressional documents.  See id. ¶ 4.  Indeed, that record does not even appear to be

an FDA record.  See, e.g., United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 144-145

(1989) (defining an "agency record" as a document created or obtained by an agency and under

the agency's control); Burka v. United States Dep't of Health and Human Servs., 87 F.3d 508,

515 (D.C. Cir. 1996) (same).  In addition, Dr. von Eschenbach's nomination record is publicly

available, and Judicial Watch may easily obtain that record by searching a standard

Congressional document database, such as http://thomas.loc.gov.

Judicial Watch also speculates that there are records missing from FDA's productions

because Senator Clinton refers to a question she made to Dr. von Eschenbach about a recess

appointment in a press release, but the "Questions of Record" that FDA produced contain no

such question.  As the press release makes clear, however, Senator Clinton's question came during the hearing on his nomination.  <u>See</u> Opp. (Dkt. Entry 26), Ex. 2, at 4 ("At the hearing last week, Senator Clinton questioned Dr. von Eschenbach on whether or not he would accept a recess appointment before a decision is made on Plan B.").  Thus, the press release does not indicate that there are responsive records other than the Congressional record of the nomination that FDA did not locate and produce.  And, as noted, FDA did not locate the Congressional record of that hearing during its search, and OL does not maintain a complete set of that type of Congressional document.  <u>See</u> Supp. Granger Decl. ¶ 4.  At bottom, Judicial Watch asserts that FDA has violated the FOIA because it did not produce a non-FDA, publicly available record, the content of which Judicial Watch is already aware.  Such a "missing record," however, provides no basis to deny summary judgment in this case, where FDA has properly searched the locations in FDA most likely to contain responsive FDA records.

Judicial Watch's "missing records" theory also fails as a matter of law, because FOIA plaintiffs may not rely on such unsupported speculation to create a question of material fact concerning the adequacy of the agency's search.  <u>See</u> <u>Ferranti v. Bureau of Alcohol, Tobacco & Firearms</u>, 177 F. Supp. 2d 41, 48 (D.D.C. 2001) (finding affidavit speculating that other documents might exist "insufficient to overcome summary judgment").  As noted, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."  <u>Safecard Services, Inc. v. SEC</u>, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  Such speculation would not defeat a summary judgment motion in any type of case.  <u>See</u> Fed. R. Civ. P. 56(e) (the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial'"); <u>see</u> <u>also</u>

Burke v. Gould, 286 F.3d 513, 517-20 (D.C. Cir. 2002) (requiring a showing of specific, material facts); Hayes v. Shalala, 902 F. Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F. Supp. 14, 18 (D.D.C. 1993) (evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment).

Judicial Watch also ignores the fact that FOIA does not require an agency to conduct a "perfect search" which yields all responsive records. Appleton v. FDA, 451 F. Supp. 2d 129, 137 (D.D.C. 2006). "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." Iturralde, 315 F.3d at 315. In sum, Judicial Watch's apparent belief that there 'must be additional records out there' falls far short of creating a genuine doubt as to the reasonableness of FDA's search.

## II.    THE AFFIDAVITS OF FDA PERSONNEL CLEARLY DEMONSTRATE THAT FDA CONDUCTED A REASONABLE SEARCH.

Judicial Watch's claim that the affidavits submitted with Defendant's motion to dismiss and for summary judgment contain insufficient detail about the searches lacks merit. Those affidavits provided a detailed, non-conclusory explanation of the nature and extent of FDA's search for records. FDA personnel explained where FDA searched for records, why it searched those locations, how it searched, and what was done with the responsive records that were found. That is more than enough to satisfy Defendant's burden of showing that its search was "reasonably calculated to uncover all relevant documents." Kowalczyk, 73 F.3d at 388; see also Perry v. Block, 684 F. 2d 121, 127 (D.C. Cir. 1982) ("[The case law does not demand] in every FOIA case that the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records."). Although Defendant believes no

further detail is necessary, it has prepared supplemental affidavits that clarify the prior affidavits and respond to the questions raised in Judicial Watch's opposition.  Taken as a whole, the twelve affidavits provide overwhelming evidence that FDA has complied with its FOIA obligations.

FDA has searched all of the FDA offices likely to have relevant documents.  Lisa Granger, a Supervisory Congressional Analyst in FDA's Office of Legislation, explained how FDA determined which offices were likely to have responsive records, and why those offices should have those records.  Specifically, the Office of Legislation is the FDA component charged with coordinating <u>all</u> Congressional inquiries, responding to all Congressional and legislative inquiries, and drafting all Congressional testimony.  <u>See</u> July Granger Decl. ¶ 10.  Ms. Granger also identified the other FDA offices which reasonably could be expected to have responsive records—the Office of the Executive Secretariat, the Immediate Office, and OGC/FDD.  <u>See</u> <u>id.</u> ¶ 12.  Representatives from those other components explained their office's responsibilities.  Indya Mungo testified that the Office of the Executive Secretariat receives and responds to correspondence directed to the Offices of the Commissioner, and has other responsibilities concerning FDA executive correspondence.  <u>See</u> Decl. of Indya Mungo, July 11, 2007, ¶ 5 (Dkt. Entry 25 at Exh. D).  Karen Schifter testified that OGC/FDD maintains over 10,000 pages of FDA documents on Plan B, due to OGC/FDD's role in preparing the administrative record and responding to discovery in the direct challenge to Plan B that Judicial Watch has pending in this Court.  <u>See</u> Decl. of Karen Schifter, July 12, 2007, ¶ 4 (Dkt. Entry 25 at Exh. F).  Ms. Schifter further explained that any documents responsive to the Judicial Watch FOIA requests within OGC/FDD would be within that collection of Plan B litigation documents.  <u>See</u> <u>id.</u>; Decl. of Karen Schifter, May 1, 2007, ¶ 3.  Carol Crim and Kelly Palmer provided

affidavits concerning the search in the Immediate Office. Their affidavits explained that the

Immediate Office maintains the Commissioner's calendar records and meeting materials. See

Decl. of Carol Crim, ¶ 4 (Dkt. Entry 25 at Exh. G); Decl. of Kelly Palmer, ¶ 5 (Dkt. Entry 25 at

Exh. H). Given that Judicial Watch requested records concerning communications and/or

correspondence between Senators Clinton, Enzi, and Murray, FDA's decision that those offices

should be searched was reasonable, and likely to uncover relevant records.

The FDA affidavits also thoroughly describe the types of searches conducted in those

offices. In their supplemental declarations, FDA personnel provide even greater detail. For

example, Ms. Granger explains that the "OL tracking system" is maintained on a unified FDA

database, the Agency Information Management System ("AIMS"). Supp. Granger Decl. ¶ 4.

The AIMS Correspondence Tracking System (ACTS) may be used to locate correspondence and

related documents with a key word search. Id. She also explains that email correspondence is

maintained electronically on Microsoft Office Outlook, and that OL also maintains hard copies

of records, including hard copies of older records that pre-date the current OL tracking system.

Id. ¶ 5. An analyst in OL conducted key word searches for "Clinton," "Murray," and "Enzi"

within the OL tracking system and the email system, and searched the hard copies of OL records

as well as certain hard copies of her personal telephone records for those terms. Id. ¶ 6. Ms.

Granger then reviewed the documents retrieved from those searches and identified the

documents responsive to Judicial Watch's request. Id.

Similarly, Ms. Mungo describes the AIMS Correspondence Tracking System ("ACTS")

within the Office of the Executive Secretariat that she used to search for the terms "Clinton,"

"Murray," and "Enzi" and identify responsive documents. Supp. Mungo Decl. ¶¶ 4, 5 (Exh. 3

-10-

hereto).  In the Immediate Office, Ms. Palmer explains that she conducted an electronic search of

the Commissioner's calendar records, which are maintained on Microsoft Office Outlook, for the

terms "Murray" and "Enzi" to locate responsive calendar records.  Supp. Palmer Decl. ¶ 6 (Exh.

1 hereto).  She also explains that Ms. Crim, who is not available because she is on extended

medical leave, would have conducted a similar search for calendar records for "Clinton,"

because the records that Ms. Palmer found for "Murray" were identical in substance to the

records that Ms. Crim found for "Clinton."  Id. ¶ 8.  Ms. Palmer further explains that she

searched in the Commissioner's "meeting materials" files, which consist of paper documents, for

documents associated with any of the meetings referenced by the calendar records, but did not

find any associated documents.  Id. ¶ 7.  Because the meetings were the same meetings that Ms.

Crim had located in her search of the calendar records, Ms. Palmer reasonably concluded that

Ms. Crim had been similarly unable to locate documents related to those meetings in the

Commissioner's "meeting materials" folder.  Id. ¶ 8.

      In Karen Schifter's supplemental declaration, Ms. Schifter describes how she identified

the portion of the Plan B litigation documents that would have responsive documents.  See Supp.

Schifter Decl. ¶ 6 (Exh. 4 hereto).  She requested that a legal assistant read through that portion

of the documents for the terms "Clinton," "Murray," and "Enzi."  Id. ¶ 7.  Ms. Schifter then

reviewed the flagged documents for responsive documents, which she forwarded to OL for

production to Judicial Watch. See id. ¶¶ 7, 8.

      Each of these supplemental declarations describes the systems or files that were searched,

as well as the types of searches conducted, including the search terms.  These searches were

reasonably calculated to locate responsive documents, and more than satisfy the agency's

obligations under the FOIA.

FDA did not withhold or redact any documents, and its personnel have testified that FDA released one copy of each responsive record that was found in those searches.  See May Granger Decl. ¶¶ 5, 10-13 (Dkt. Entry 25 at Exh. A); July Granger Decl. ¶ 12 (Dkt. Entry 25 at Exh. B). The released records are included as an exhibit to the summary judgment motion.  See Exhs. to July Granger Decl. (Dkt. Entry 25 at Exh. B).  Accordingly, it does not matter whether each FDA employee listed which records she found.  The only relevant point is that the offices FDA searched found some records — which corroborates FDA's position that those offices were reasonable locations to search — and that FDA released all of the records that were found, except those that were exact duplicates of each other.  Thus Judicial Watch's attempt to characterize the alleged lack of information concerning "what records were actually found" as a deficiency in the affidavits simply emphasizes the extent to which it is grasping at straws to find support for its opposition.

In sum, FDA has conducted a reasonable search for responsive documents, and FDA personnel have exhaustively documented the details of those searches in no less than twelve affidavits.  Judicial Watch has failed to raise any question of material fact related to the adequacy of the agency's searches, and this Court should dismiss its claims, or, in the alternative, grant summary judgment in favor of the agency.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

**Daniel Meron**
General Counsel

Sheldon T. Bradshaw
Chief Counsel
Food and Drug Division

Eric M. Blumberg
Deputy Chief Counsel, Litigation

Wendy S. Vicente
Associate Chief Counsel
United States Department of Health and Human Services
Office of the General Counsel

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

JUDICIAL WATCH, INC.,   )
          )
     **Plaintiff,**  )
          )
    **v.**     )  **Civil Action No. 07-561 (RCL)**
          )
U.S. FOOD AND DRUG   )
ADMINISTRATION,    )
          )
          )
    **Defendant.**  )
_____)

## RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant United States Food and Drug Administration ("FDA") hereby submits a response to Plaintiff's Statement of Material Facts as to which there is no Genuine Dispute.

1.  FDA admits that it released responsive records more than twenty business days after Judicial Watch submitted the three FOIA requests at issue in this case. However, FDA further responds that all responsive records have been released to Judicial Watch, and therefore this factual assertion is not material.

2.  FDA admits that it released records responsive to the Clinton FOIA request more than seven months after FDA received that request. However, FDA further responds that all responsive records have been released to Judicial Watch, and therefore this factual assertion is not material.

3.  FDA admits that it released records responsive to the Enzi and Murray FOIA requests more than two months after FDA received that request. However, FDA further responds that all responsive records have been released to Judicial Watch, and therefore this

factual assertion is not material.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

    Daniel Meron
    General Counsel

    Sheldon T. Bradshaw
    Chief Counsel
    Food and Drug Division

    Eric M. Blumberg
    Deputy Chief Counsel, Litigation

    Wendy S. Vicente
    Associate Chief Counsel
    United States Department of Health and Human Services
    Office of the General Counsel

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-561 (RCL) |
| | ) | |
| U.S. FOOD AND DRUG ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL DECLARATION OF KELLY PALMER

I, Kelly Palmer, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an Executive Assistant, Immediate Office of the Office of the Commissioner ("Immediate Office"), United States Food and Drug Administration ("FDA").

2. My responsibilities include, among other things, responding to requests made to FDA under the Freedom of Information Act ("FOIA") that are internally directed to the Immediate Office.

3. I have previously conducted a search in the above-captioned matter for documents responsive to two requests submitted under the Freedom of Information Act ("FOIA") by Judicial Watch, Inc. ("Judicial Watch"), for documents concerning communications and/or correspondence between the FDA and Senators Patty Murray and Michael Enzi, and any of their

agents and/or representatives, regarding Plan B ("the Murray Request" and "the Enzi Request").

4. I understand that Judicial Watch has challenged the adequacy of those searches, alleging that a declaration that I submitted to describe my search did not describe in sufficient detail the search terms or the type of searches performed, how the searches were conducted, the record system used, or what was found in those searches. I submit this declaration to provide further details of the searches that I performed.

5. I understand that Judicial Watch also challenges the adequacy of a search performed in the Immediate Office by Carol H. Crim for documents concerning communications and/or correspondence between the FDA and Senator Hillary Rodham Clinton, and any of her agents and/or representatives, regarding Plan B ("the Clinton Request"). As I stated in my declaration, Ms. Crim is currently on extended medical leave and is not available to provide further details about the search that she performed for responsive documents. Decl. of Kelly Palmer dated July 11, 2007, at ¶ 5. I am familiar with the type of search she conducted, however, and can provide more general information about the records in the Immediate Office that she searched.

6. As I stated in my declaration, I conducted a search for communications and/or correspondence between the FDA and Senators Murray and Enzi relating to Plan B in the Commissioner's calendar records and meeting materials. Decl. of Kelly Palmer dated July 11, 2007, at ¶ 5. To search the Commissioner's calendar records, I searched for the terms "Enzi" or "Murray" in the Commissioner's electronic calendar records, which are maintained in Microsoft Office Outlook. I found two records of meetings between the Commissioner and Senator Enzi (dated June 8, 2006, and October 4, 2006) that did not describe the subject matter of the meeting. Although the records do not state that those meetings were about Plan B, I produced the records as being potentially responsive. I also located five additional pages of documents concerning the

scheduling of a meeting in 2006 between the Commissioner and Senators Enzi, Clinton, and Murray to discuss Plan B. For the Enzi Request, the seven pages of documents that I located in the calendar records were produced at the end of the documents that FDA produced to Judicial Watch on July 10, 2007. For the Murray Request, the five pages of documents that I located in the calendar records were produced at the end of the documents that FDA produced to Judicial Watch on July 10, 2007.

7. The Commissioner's "meeting materials" consist of hard copies (i.e., paper) of documents that are associated with particular meetings. Any FDA documents in the Immediate Office related to the Commissioner's meetings would be found in those materials. I searched the files containing meeting materials for any documents associated with the meetings referred to in the documents that I located as responsive to both the Murray and Enzi Requests. I did not find any meeting materials related to those meetings.

8. I have also reviewed the documents that were produced by Ms. Crim in response to the Clinton Request, which were the last six pages of documents produced to Judicial Watch on April 6, 2007. The documents that she located are identical in substance to the documents that I located in my search for the Murray Request. I can therefore reasonably conclude that Ms. Crim conducted a similar electronic search for calendar records in Microsoft Office Outlook referring to "Clinton." In addition, because the referenced meetings in the documents responsive to the Clinton and Murray requests were the same, I can also reasonably conclude that she searched the

same general type of meeting materials documents that I searched and that she similarly did not find any responsive documents in those materials.

Executed on August 7, 2007.

*Kelly Palmer*
Kelly Palmer
Executive Assistant
United States Food and Drug Administration

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,      )
                                      )

          Plaintiff,        )

          v.                  )      Civil Action No. 07-561 (RCL)

U.S. FOOD AND DRUG      )
ADMINISTRATION,         )

          Defendant.      )

## SUPPLEMENTAL DECLARATION OF LISA C. GRANGER

I, Lisa C. Granger, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Supervisory Congressional Analyst, Office of Legislation ("OL"), Office of the Commissioner, United States Food and Drug Administration ("FDA").

2. I have previously coordinated the production of documents responsive to three requests submitted under the Freedom of Information Act ("FOIA") by Judicial Watch, Inc. ("Judicial Watch"), for documents concerning communications and/or correspondence between the FDA and Senators Hillary Rodham Clinton, Patty Murray, and Michael Enzi, and any of their agents and/or representatives, regarding Plan B. I also conducted searches for documents responsive to those requests within OL.

3. I have submitted two declarations in this matter providing details about the coordination of documents for production to Judicial Watch, as well as the searches that I

conducted to locate responsive documents. I understand that Judicial Watch has challenged the adequacy of those searches because those declarations allegedly do not describe in sufficient detail the search terms or the type of searches performed, how the searches were conducted, the record system used, or what was found in those searches. I submit this declaration to provide further details of the searches that I performed.

4.  Within OL, documents responsive to Judicial Watch's requests would most likely be found in the OL tracking system, in the email system, and in OL's hard copies of records. The OL tracking system is maintained on the Agency Information Management System (AIMS). The AIMS Correspondence Tracking System (ACTS) is a Web-based program that records, routes, tracks, stores, and generates reports on correspondence and related agency records. ACTS is a unified agency-wide tracking system where all correspondence and related documents are archived, and has been used in OL since approximately 2004. Any correspondence from approximately 2004 to the present between the relevant Senators and FDA is available on ACTS within OL's tracking system and may be located electronically by key word searches. OL does not maintain a complete set of all publicly available Congressional documents such as hearing transcripts within its tracking system (or elsewhere).

5.  Email correspondence within OL is maintained on Microsoft Office Outlook, and may be searched electronically using key words. OL also maintains hard copies of records, including hard copies of older records that pre-date the AIMS-based OL tracking system.

6.  I requested that an analyst on the OL staff conduct a search of the OL tracking system for the terms "Clinton," "Murray," or "Enzi." I also requested that the analyst conduct a search of OL email correspondence and hard-copies of OL records for those terms. In addition, the analyst identified hard copies of her own telephone records that might contain responsive records

2

and searched those records for the same terms. I reviewed the documents retrieved from those searches and identified any communications or correspondence between FDA and the relevant Senators or their agents or representatives regarding Plan B. All of the responsive documents that we located were produced in my letters to Judicial Watch dated April 6, 2007, and July 10, 2007.

7. The three FOIA requests were also conveyed to the only other offices within FDA that might reasonably be expected to have responsive documents: the Office of the Executive Secretariat, the Immediate Office of the Office of the Commissioner, and the Office of the General Counsel (OGC) — Food and Drug Division of the Department of Health and Human Services. Each of those offices conducted its own search for relevant documents and forwarded responsive documents to OL for production to Judicial Watch. All of the responsive documents located in those offices that were not exact duplicates of the documents that I collected in OL were produced in my letters to Judicial Watch dated April 6, 2007, and July 10, 2007.

Executed on August 7, 2007.

Lisa C. Granger
Supervisory Congressional Analyst
Office of Legislation
United States Food and Drug Administration

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-561 (RCL) |
| | ) | |
| U.S. FOOD AND DRUG | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### SUPPLEMENTAL DECLARATION OF INDYA MUNGO

I, Indya Mungo, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Policy Analyst, Office of the Executive Secretariat, United States Food and Drug Administration ("FDA").

2. I have previously conducted searches for documents responsive to three requests submitted under the Freedom of Information Act ("FOIA") by Judicial Watch, Inc. ("Judicial Watch"), for documents concerning communications and/or correspondence between the FDA and Senators Hillary Rodham Clinton, Patty Murray, and Michael Enzi, and any of their agents and/or representatives, regarding Plan B.

3. I have submitted two declarations in this matter providing details about the searches that I conducted to locate responsive documents. I understand that Judicial Watch has challenged the adequacy of those searches because those declarations allegedly do not describe

in sufficient detail the search terms or the type of searches performed, how the searches were conducted, the record system used, or what was found in those searches. I submit this declaration to provide further details of the searches that I performed.

4. I conducted a search of records in the Office of the Executive Secretariat's Agency Information Management System (AIMS). Any potentially responsive records concerning correspondence or communications would be within the AIMS Correspondence Tracking System (ACTS), which is a Web-based program that records, routes, tracks, stores, and generates reports on correspondence and related agency records. ACTS is a unified agency-wide tracking system where all correspondence and related documents are archived.

5. Within the ACTS system, I searched for documents containing the terms "Clinton," "Murray," or "Enzi." I then reviewed the documents that I located to determine whether the documents concerned communications or correspondence between FDA and Senators Clinton, Murray, or Enzi (or their agents or representatives) regarding Plan B.

6. All of the responsive documents that I located were forwarded to FDA's Office of Legislation for production to Judicial Watch.

Executed on August 6, 2007.

Indya Mungo
Policy Analyst
United States Food and Drug Administration

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JUDICIAL WATCH, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )  Civil Action No. 07-561 (RCL) |
|  | ) |
| U.S. FOOD AND DRUG | ) |
| ADMINISTRATION, | ) |
|  | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**SUPPLEMENTAL DECLARATION OF KAREN E. SCHIFTER**

I, Karen E. Schifter, do hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an Associate Chief Counsel, Office of the General Counsel — Food and Drug Division (OGC/FDD), Department of Health and Human Services.

2. I have previously supervised searches for documents responsive to three requests submitted under the Freedom of Information Act ("FOIA") by Judicial Watch, Inc. ("Judicial Watch"), for documents concerning communications and/or correspondence between the FDA and Senators Hillary Rodham Clinton, Patty Murray, and Michael Enzi, and any of their agents and/or representatives, regarding Plan B.

3. I have submitted two declarations in this matter providing details about the searches that I supervised to locate responsive documents. I understand that Judicial Watch has challenged the adequacy of those searches because those declarations allegedly do not describe

in sufficient detail the search terms or the type of searches performed, how the searches were conducted, the record system used, or what was found in those searches. I submit this declaration to provide further details of the searches that were performed.

4. OGC/FDD has been involved in coordinating, since January 2005, the government's defense in litigation challenging FDA decision-making on Plan B, and I am the attorney within OGC/FDD assigned to those cases. In the course of assembling the administrative record and responding to discovery in that litigation, OGC/FDD has collected over 10,000 pages of FDA documents on Plan B, including correspondence, memoranda, and emails (in addition to the more than 100,000 pages in comments to the FDA docket and submissions from the drug sponsor related to its drug application). These litigation documents include all documents that the agency relied on in making its Plan B decisions through August 24, 2006, as well as all communications with Congress concerning Plan B through March 3, 2006, and a collection of more than 9,000 pages of emails through June 7, 2006. Any document within OGC/FDD that would be responsive to Judicial Watch's requests would be within this collection of Plan B litigation documents.

5. These Plan B litigation documents are not a record "system"; rather, they contain copies of documents obtained from other FDA record systems. Therefore, the searches that I supervised were intended to supplement searches conducted within normal record systems by other offices within FDA, to double-check those other searches.

6. In the course of compiling the administrative record and responding to discovery requests, I have read through, several times, all of the FDA memoranda, emails and communications that have been collected for the lawsuit (the "over 10,000 pages of FDA documents" referenced in paragraph 4, but excluding the more than 100,000 pages in comments

to the FDA docket and submissions from the drug sponsor related to its drug application). I was therefore familiar enough with that document set that I knew that responsive documents would be located only within a specific range of documents that contained communications and/or correspondence with entities outside FDA. I asked a legal assistant to read through that portion of the documents. The legal assistant searched through hard copies of those documents and flagged those documents containing the terms "Clinton," "Murray," or "Enzi." I reviewed the flagged documents for those concerning communications and/or correspondence between FDA and the relevant Senators regarding Plan B.

7. Following the search for documents concerning Senator Clinton, I had access to the responsive documents that had already been located by FDA's Office of Legislation ("OL"). I compared the responsive documents that I had located with OL's documents, and I produced all of the documents that I had located that were not exact duplicates of OL's documents to OL for production to Judicial Watch. Decl. of Karen E. Schifter dated May 1, 2007, at ¶ 5.

8. Following the search for documents concerning Senators Murray and Enzi, I forwarded all of the responsive documents that I located to OL for production to Judicial Watch. Decl. of Karen E. Schifter dated July 12, 2007, at ¶ 6.

Executed on August 6, 2007.

Karen E. Schifter
Associate Chief Counsel
United States Food and Drug Administration

3